SimoN, J.
This appeal is taken by the defendant, as syndic of the insolvent successions of Dassize Bossier and Pierre Eva-riste Bossier, both deceased, from a judgment which orders him to pay in his said capacity to the plaintiff, the sum of $19,088, with eight per cent interest per annum thereon from the 21st of May, 1840, said sum and interest to be paid jointly by the said successions; and further ordering, that the mortgage set forth in the petition be allowed, recognized, and enforced against both estates.
The facts of this case are these: Dassize Bossier and P. E. Bossier owned, in partnership, a certain plantation and slaves, and they cultivated the plantation in partnership. They were, indebted to the plaintiff in a large sum of money, upon seven *244 notes of hand, three of which were subscribed by “ Dassize Bossier,” and the other four by “ Bossier frercs,” all bearing eight per cent interest until paid. Those notes were due as follows: one for $1815 95 on the 1st of May, 1832; another for $ 1961, on the 1st of May, 1833 ; another for $2118, on the 1st of May, 1834; another for $2287 50, on the 1st of May, 1835 ; another for $1000, on the 6th of April, 1831; another for $1065, on the 11th of April, 1833 ; and the last one for $1080, on the 1st of July, 1833; and they were all made payable to the plaintiff, or to her order.
Dassize Bossier died on the 14th of October, 1839, and his estate remained in the possession of his widow, who administered it for herself and for her two children, the heirs of the deceased, as their tutrix. Tn the mean time, on the 28th of December, 1839, she presented a petition to the Court of Probates, to be confirmed as tutrix; and to cause an inventory and appraisement of the property to be made, and to call a meeting of her children’s family, to deliberate and give their advice on their interest in the succession, and particularly, whether said succession should be accepted with the benefit of inventory, and on divers other subjects. This was done ; and the family meeting determined that it should be taken with the benefit of an inventory; that the widow should take certain property at the estimation price ; and further, that the partnership with P. E. Bossier should continue for two years longer, from the 1st of January, 1840. This was in accordance with a written agreement of thepartners, signed by them on the 1st of August, 1839, in which they stipulate that, in case of certain circumstances happening in which the partnership might be considered as dissolved, it shall last for two years, longer after the 1st of January ensuing. All these proceedings were duly homologated.
On the 21st of May, 1840, P. E. Bossier, the surviving partner, made a settlement with the plaintiff, in consequence of which he gave her a note for $19,088, payable to her on demand, with eight per cent interest, per annum, from date until paid, “ pour valeur regue, en sept billets signes par Bossier freres et par moi, retires ce jour pour eompte des memos" and signed it: “ P. E. Bossier, charge de pouvoirs pour Bossier freres."
*245 A few months afterwards, the widow presented a petition to the Court of Probates, in which, among other subjects, she mentions the debt due to the plaintiff by the particular partnership existing between her children and P. E. Bossier, and represents that the payment of said debt could be delayed by giving said plaintiff a special mortgage on certain property that she described. She prays that a family meeting may be convened for that purpose. This was also done, and on the 6th of November, 1840, the family meeting declared, that “ they are further of opinion that it would also be advantageous to the interest of the minors, and they so recommend, that their mother and tutrix be further authorized, and she is hereby authorized and empowered, to give and sign another mortgage, jointly with P. E. Bossier, in favor of the widow Buard, [the plaintiff,] to secure to her the payment of the sum due her by the firm of Bossier fréres, on the property hereinafter described,” <fec. These proceedings were duly homo-logated ; and, on the 10th of November, 1840, the act of mortgage was executed by the widow of Dassize Bossier and P. E. Bossier, as a security for the payment of the note of $19,088 and interest, and accepted by the plaintiff through her attorney in fact duly authorized for that purpose.
It further appears, that the widow of Dassize Bossier made a renunciation of her rights as widow in community, about the 19th of December, 1841 ; and we find that, on the 9th of March, 1843, she presented a petition to the Court of Probates, in which she states that the succession of her late husband is insolvent, and will not be able to pay its debts ; and that she wishes, a family meeting to be convened for the purpose of deciding, whether it would not be for the best interests of the minors to renounce the succession. This was again done, and the family meeting determined that, in order to facilitate the settlement of the estate by the creditors, it was the interest of the minors that they should renounce entirely and absolutely all claims, interest and pretensions whatever, in and to the succession of their father, said renunciation to be made, under the express condition and understanding, that the mass of the creditors of the successions of Jules V. Bossier and Dassize Bossier, formerly commercial partners under the name of J. V. Bossier & Co., should approve of the ac *246 count rendered in the names of the two widows, each acting as administratrix, and that each administratrix, and their agent or attorney in fact, should be discharged from all and every liability resulting from their said administrations) &c. These proceedings were homologated; the renunciation of the heirs was made in due form immediately after said homologation ,• and it is admitted in the record, that the creditors of the commercial firm of J. Y. Bossier & Co. complied with the conditions mentioned in the deliberation of the family meeting.
As to the account rendered by the widow of Dassize Bossier, and approved by the creditors, the record does not inform us of its contents ; and, therefore it is not shown whether the mortgage given to the plaintiff was included in said account or not; and it seems, that those creditors were only those of the commercial firm of J. Y. Bossier & Co., and not those of the partnership of Bossier freres, or of Dassize Bossier personally.
The present suit was instituted against the syndic of the vacant succession of Dassize Bossier, and against P. E. Bossier, on the note and act of mortgage above mentioned, for the purpose of enforcing its payment; but the latter having died during its pendency, the case was transferred to the Probate Court, where the Judge thereof having recused himself, it was ordered that it be referred back to the District Court, where it was revived against A. Lemée, as syndic of the succession of P. E. Bossier, deceased.
The defendant, as syndic of the estate of Dassize Bossier, denies all indebtedness to the plaintiff on the part of said succession ; pleads that, if it ever was indebted, the 'debt was extiu-tinguished by novation and remission, by the transaction made on the 21 st of May, 1840, between the plaintiff and P. E. Bossier ; that the latter had no authority to bind the said succession or its property, as the same was vacant; that the acts of the tutrix, and advice of the family meeting, &c., are yoid and illegal ; that the widow and the heirs have renounced the estate and community, whereby the same was always vacant; that they had no power to bind or incumber the same; that it was insolvent at the time of the death of D. Bossier; and that his heirs had no power to give a mortgage, note, or do any other act whereby a *247 preference could be given to one creditor over the others, &c. He also pleads the prescription of five years to the old notes men', tionedin the petition, As syndic of the estate of P, E. Bossier, the defendant pleads the general issue.
It is perfectly clear that, as to the one-half of the claim and mortgage sued on, the succession ofP. E. Bossier, deceased, who was originally jointly bound with his co-partner for the payment of the old notes, is liable to pay it; and that said'mortgage is valid for said half.
But with regard to the other half, for which the insolvent es late of Dassize Bossier is sought to be made responsible under said note and mortgage, as being his portion of a debt due by the firm of Bossier freres, it will become necessary to examine divers questions raised by the pleadings, the first and most important of which brought for our solution, grows out of the defendant’s plea of prescription to the old notes which are proven to have been the consideration for which the note sued on was executed by the surviving partner.
It is first proper to remark, that the partnership of “ Bossier freres” was a particular one ; it was contracted for the cultivation of a cotton plantation, and, therefore, its object was not for any business of a commercial nature. Civ. Code, art. 2806. In such partnerships, which are also called ordinary partnerships, (Civ. Code, art. 2707,) the partners are not bound, in solido, for the debts of the firm; and no one of them can bind his partners, unless they have given him power to do so, either specially, or by the articles of partnership, (Civ. Code, arts. 2843. 6 Rob. 351,) and each partner is bound for his share of the partnership debt. Art. 2844. The partners, therefore, in this case, were joint debtors ; and we have recognized in the case of Davis v. Houren et al. 6 Rob. 261, that art. 3517 of the Civil Code, which says, that “ the acknowledgment of a debt by one joint debtor, interrupts the prescription with regard to all the others, and even their heirs,” was intended to apply to debtors in solido, according to the French text of the law — Débiteurs solidaires ; and that, as the provision in the English text is at variance with the general provisions of the Code, in relation to the two classes of debtors, the discrepancy found in the English text of art. 3517, was an error of a transía *248 tor or transcriber. It results from this interpretation of the law, with which we have no reason to be dissatisfied, that when the acknowledgment of a debt is made by a joint debtor, such acknowledgment does not interrupt the prescription with regard to the others. Each is bound for his virile share of the debt; and, therefore, each is at liberty to act for himself, and the effect of his acts cannot be extended to the benefit or prejudice of his co-debtors; so true is this, that the law has never intended that a suit brought against one of several debtors should interrupt prescription with regard to all, unless they be debtors in solido. Civ. Code, arts. 2092, 3517. It is clear, therefore, that any acknowledgment made by P. E. Bossier, of the debt originally due by the partnership to the plaintiff, could not interrupt prescription with regard to his portion ; and,’ a fortiori, he had no right, either in the name of his said partner, or by any act of his own amounting to an acknowledgment of the debt by the partnership, to renounce the benefit of the prescription which his joint co-debtor might have acquired.
Were the old notes prescribed at the time P. E. Bossier undertook to settle the debt with the plaintiff, by giving a note by him signed in the name of “ Bossier fréres,” for the sum of $19,088, for the security of which the mortgage complained of by the appellant was subsequently executed 1 We have already seen the periods at which the seven old notes were due ; they were made payable to order, and became prescribed by the lapse of five years. Civ. Code, art. 3505. Thus it is established, that the one for $1000, was prescribed on the 6th of April, 1836; that the note for $1815 95, was extinguished by prescription on the 1st of May, 1837; that the one for $1065, was prescribed on the 11th of April, 1838; that that’ for $1961, was prescribed on the 1st of May, 1838 ; the one for $1080, on the 1st of July, 1838 ; the one for $2118, on the 1st of May, 1839 ; and the last one for $2287 50, on the 1st of May, 1840. The note sued on was executed on the 21st of May, 1840, after all the old notes had been prescribed.
But- an attempt has .been made to show that Dassize Bossier himself, before his death, had made such acknowledgments of the debt for which the new note and mortgage were given, as *249 to interrupt the prescription whieh was then running; and it be-hoves us to inquire into the evidence adduced for that purpose. Divers witnesses have been examined on this subject, and what do they prove ? The first one, Chatargné, says: that in a conversation with Dassize Bossier, the latter told him that he and his brother were indebted to their sister, Mad. Buard, and that, therefore, he was not afraid to be pushed by her; but he did not mention the amount. The second, Janin, swears that, previously to 1833, conversing with D. Bossier, the latter told him that they (the two brothers) had borrowed from their sister, Mad. Buard, the money with which they had purchased seven or eight negroes. The third, L. D. Bossier, says that the last conversation he had with D. Bossier on the subject of the debt due by the two brothers to Mad. Buard, (witness having-had frequent conversations with them about said debt before,) was in the fall q/‘1839, a little before the death of Dassize, not more than six days before his death. In this conversation, witness said to Dassize, that he supposed Bossier freres owed Mrs. Buard about $10,000, to which Dassize answered, that he wished that was all, and that it was about double that amount. In this conversation Dassize said, that it was the intention of Bossier freres to give to Mrs. Buard a mortgage on their property to secure her the amount due her. The fourth, S. Bossier, states a conversation he had with Dassize, two or three months before his death; in ichich he told witness that he himself owed Mrs. Buard a large sum of money amounting, as witness thinks, to about §25,000, and that he had been negligent about making any settlement of it; he said also it was for money lent by Mrs. Buard to the firm of Bossier freres. The fifth, Addlé, says that Dassize told him they (the brothers) were in debt to Mrs. Buard, whom he called “ petite sosur this was said in August, or September, 1839, and that it was for borrowed money. The sixth, Faber, .testifies that Dassize told him that he had borrowed a large sum of moneyfrom his sister. The seventh, Hyams, swears that Dassize told him that the plantation of Bossier freres owed Mrs. Buard a considerable amount. And the eighth, Hertzog, says that he knew from Dassize him *250 self that he was indebted to Mrs. Buard, and does not know the amount.
By arts. 3486, 3516 and 3518, of the Civil Code, prescription ceases to run, whenever the debtor makes acknowledgment of the right of the person.whose title he prescribes. These articles have been the subject of divers decisions of this court, in which we have had occasion to express our opinion on the nature of the acknowledgment required to interrupt prescription. In the case of Carraby v. Navarre, (3 La. 262,) this court held, that prescription is interrupted by the acknowledgment of the debtor, and that his promise to pay is an acknowledgment of the debt. It was also said, that a man cannot renounce the right of pleading prescription which may afterwards be acquired; but that by acknowledging the debt, he may renew the obligation and interrupt prescription, so as to make it run only from the date of the acknowledgment. In the case of Conway v. Williams’ administrator, (10 La. 569,) we said, that the acknowledgment of a debt, in order to interrupt prescription, must be specific: an acknowledgment of the debt. In the case of Tyson v. Magill, (13 La. 145,) we held, that á conditional offer by a defendant, in a conversation with the plaintiff’s counsel, that he would pay the note, if long time enough was given, did not amount to a new promise, so as to take the case out of prescription. In the case of Hays v. Marsh, (9 Rob. 26,) we thought that the statement made by the defendant, that he supposed he would have to pay the note presented to him by the plaintiff’s attorney, in whose hands it was for collection, if the amount thereof could not be got out of the succession of his co-debtor, in solido, .was such an acknowledgment of the debt as would interrupt prescription : the debtor’s expectation of being obliged to pay, nay, his consent to pay, was in relation to a specific debt. .And in the case of Courtebray v. Rils, (9 Rob. 512,) we again held, that the acknowledgment of a debt, in order to interrupt prescription, must be specific, and such as to apply the evidence of it to a particular and specific debt. We also said, that with regard to the renunciation of a prescription already acquired, such renunciation, being in the nature of the renewal of an obligation, must be specially proven. Dumoulin, quoted by Troplong, in his treatise on Prescription, No. 524, *251 says : “ Simplex recognitio non disponit, neo immutat statum rei“ 11 faut qu'une reconnoisance soit motivée et donnee en connoisance de cause,” says Troplong. <! Si sit simplex recog-nitio, non immutatur qualitas reí.” See also Troplong, Nos. 55 and 56, in which he says: “ 11 faut que les actes dont on pretend induire une renonciation établissent lapreuve irrefraga-ble et non equivoque d’un abandon.” Here it seems that Dassize Bossier, who is shown to have repeatedly acknowledged in his conversations with the witnesses, that he owed a large sum of money to his sister, did not make those acknowledgments with the intention of acknowledging said debt for the purpose for which those conversations are now used, to wit, to interrupt prescription. They were loosely made with regard to no fixed amount whatever ; and no exact time or date is fixed by the witnesses, from which, .after interrupting the prescription which was then’running in consequence of the acknowledgment, it would begin to run, de novo, from the date of such acknowledgment. See the case of the New Orleans Savings Bank v. Harper et al. ante, 231. It is true, one of the witnesses, L. D. Bossier, proves that about six days before Dassize’s death, the latter admitted that he owed about twenty thousand dollars, and that he and his brother intended to give a mortgage to secure it; but he did not allude to any particular debt, to any specific engagement; and if this fact were to have any weight, it could only apply to the last note, as all the others were already prescribed ; and as this witness is the only one who establishes a fact in relation to a debt to be secured by mortgage, this would be insufficient to show such agreement, as the amount of the last note is over $500. 1 Rob. 335. Not-
withstanding the number of witnesses who have proved that Dassize Bossier recognized himself largely indebted to the plaintiff, the acknowledgment was not of a particular and specific debt; it was not an acknowledgment of the debt; it was not made to benefit the plaintiff; it was the result of loose conversations with the witnesses, and is not such as to apply the evidence of it to any particular and specific debt, so as1 to permit the prescription to run again from the date of the interruption.
With this view of the question it is clear, that the debt for which the note and mortgage sued on were given, was entirely *252 prescribed before the date of the execution of the new note-; and that no one had a right to renounce the prescription already acquired, unless specially and sufficiently authorized to do so.
On this last branch of the question, it cannot be doubted that the estate of Dassize Bossier being insolvent, and taken under the benefit of an inventory, the creditors of said estate had a greater interest in it than the widow and heirs. Civ. Code, arts. 1051, 1056, et seq. It was subsequently renounced by the latter; and, according to art. 981 of the Civil Code, the effect of the acceptance going back to the day of the opening of the succession, that of the renunciation must be the same. Pothier, Propriété, says : “ Lorsque Vhéritier a qui une succession a été déférée y renonce, il est censé n’avoir jamais été saisé des biens de cette succession.” No. 248. Toullier, vol. 4, No. 342. And it is a well known rule, that the privileged and mortgaged rights of creditors are invariably fixed at the time of their debtor’s death. Civ. Code, art. 3327. Toullier, vol. 4, No. 392. Bethany v. His Creditors, (7 Rob.) Pelié et al. v. Citizens Bank of Louisiana, (11 Rob. 248.) It follows, therefore, that the rights of the creditors could not be changed by the acts of the widow and heirs; that no prescription could be renounced by them, to the prejudice of the other creditors ; and that as the syndic represents here, all the creditors who have an interest in acquiring and maintaining the prescription which had run out at the time and after the opening of the succession — “ ay ant intérét a ce que la prescription soit acquise,” (Civ. Code, art. 3429,) he has a right to plead it, even in case the person claiming the estate at its opening, should renounce such right of prescription. The partnership may have been considered by the widow and heirs, and by P. L. Bossier, as continued by the agreement of the parties; but they had no right to continue it without the consent of all the creditors, since the succession was insolvent, and administered under the benefit of an inventory. It was dissolved by the death of Dassize, (Civ. Code, art. 2851, Pothier, Société, No. 144,) and it is well settled, that after the dissolution of a partnership, none of the members can bind the others, or the firm, for the payment of a debt which has been prescribed, any more than they can create an entirely new obligation, Davis v, Houren et al. 6 Rob. 256.
Hertzog, Tuomey and J. Taylor, for the plaintiff.
Roysdon, Sherburne and J. B. Smith, for the appellant.
We are, therefore, of opinion, that the plaintiffs cannot recover as to the succession of Dassize Bossier, represented by the defendant as its syndic.
It is, therefore, ordered and decreed that, with regard to the liability of the succession of Dassize Bossier, deceased, to pay jointly and for one-half, the amount of the note sued on, the judgment of the District Court be annulled, and reversed; and that ours be in favor of the defendant, its syndic and appellant, annulling the note and mortgage sued on as if the same had never been executed as to the said succession, with costs in both courts. And it is further ordered and decreed, that, as to the succession if P. E. Bossier, the judgment appealed from be affirmed, with costs.